IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WESTBURY COMMUNITY HOSPITAL, LLC | § § § | CASE NO. 11-33626-H1-11 |
| Alleged Debtor | § | (INVOLUNTARY CHAPTER 11) |

# EMERGENCY
## MOTION FOR APPOINTMENT OF CHAPTER 11 TRUSTEE AND REQUEST FOR EXPEDITED HEARING

Petitioning creditors, Sehgal & Sons Enterprises, L.P. dba Ultra Building Services, HDK Enterprises, Inc. dba Southside LTC Pharmacy, Bidulfo Montoya dba Lucy's Commercial Services, 5556 Gasmer, LP, and Bhandara Family Revocable Living Trust (collectively "Petitioning Creditors"), hereby move this Court on an emergency basis, pursuant to 11 U.S.C. §1104(a) and (b), for the appointment of a Chapter 11 trustee ("Trustee") to manage the affairs of Westbury Community Hospital LLC ("Westbury" or "Alleged Debtor") and in support thereof would state as follows:

### Summary of Emergency

An emergency exists because the Alleged Debtor is a hospital facility in Houston, along with two satellite outpatient locations, which provides healthcare services to its patients. The Alleged Debtor is currently under new ownership that is also responsible for its management and daily operations. The current majority interest holders and managers of the Alleged Debtor are diverting funds from the hospital, commingling non related businesses and grossly mismanaging the Alleged Debtor's affairs. Thus, a Chapter 11 Trustee is necessary to take control of the

151914/00019/00002698.DOCX 1

assets in order to prevent their dissipation and any disruption in the hospital's operations and preserve patient care.

Continuum Management LLC ("Continuum") owns a majority interest in the Alleged Debtor and is responsible for its daily operations and management. Continuum acquired its majority interest in the Alleged Debtor through a Merger, discussed more fully herein, which finalized on January 14, 2011. Downtown Hospital, LLC ("Downtown Hospital") is the former owner and current minority interest holder. Downtown Hospital is also a Board Member of the Alleged Debtor but maintains no control over the Alleged Debtor. Although the Merger finalized on January 14, 2011, Continuum has managed the Alleged Debtor's operations since March 2010 and asserted control over its financial affairs since November 2010. During this time, Continuum has engaged in pattern of fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the Alleged Debtor. Most significantly:

- Continuum has not paid its vendors for goods and services. As of the Involuntary Petition Date, the Alleged Debtor's book and records indicate that its vendors are owed in excess of $1.7 million. Of this sum, more than 70% is over 60 days delinquent and 21% is more than 30 days delinquent.

- The Alleged Debtor's book and records indicate that payments to certain current critical utility providers are more than 120 days delinquent, causing a concern that necessary utilities could be disconnected and disrupt patient care.

- The Texas Department of State Health Services completed an audit of the Alleged Debtor on March 17, 2011 and cited numerous deficiencies in compliance with required hospital procedures.

- The Alleged Debtor's vendors have refused to continue supplying the hospital, causing the facility to be inadequately equipped to provide proper patient care.

- The Alleged Debtor's books and records indicate that in the 45 day period between March 10, 2011 and April 24, 2011, Continuum Management has issued checks to itself and its principals totaling approximately $350,000. Continuum refuses to provide an accounting for these payments.

- The lack of adequate management and ill equipped facility has lead to significant turnover in healthcare staffing.

- Continuum is improperly paying expenses which are not the responsibility of the Alleged Debtor.

- The Hospital provides treatment to approximately 35 patients per day, while the outpatient facilities average 300 patients daily, equating to gross revenue of approximately $1 million per month.

- Continuum has engaged in "check kiting", by knowingly depositing checks from one of its bank accounts into its operating account, located a different bank, even though funds were not available to honor the checks.

- Continuum is improperly operating one of its affiliated entities from the hospital which could jeopardize the hospital's licensing.

- Since November 24, 2010, the Alleged Debtor has received $1.45 million in advances on its line of credit. Neither Continuum nor any of its principals have personal liability on the LOC. The principal of Downtown Hospital has executed a guarantee for the line of credit.

- Continuum improperly refuses to provide any accounting or financial reports to Downtown Hospital Managers in violation of its Operating Agreement.

- Continuum has not provided required financial reporting to its secured lender, as required by Westbury's loan documents.

- Since Continuum has taken control of the Alleged Debtor's bank accounts, substantial "NSF" charges have been incurred and checks have been returned unpaid as "NSF".

- Continuum has restricted access by Downtown Hospital Managers to the Alleged Debtor's bank account which receives electronic payments from Medicare and Medicaid. Upon information and belief, a payment of close to $650,000 is expected in this account at anytime and a valid concern exists that Continuum will divert this money away from the hospital.

Emergency relief is necessary because the hospital continues to operate and this continued diversion of funds will likely cause the hospital to cease operations and detrimentally impact its patients.

## I.     Facts Pertaining to Involuntary Bankruptcy

1.     This involuntary Chapter 11 case was filed on April 27, 2011 ("Involuntary Petition Date"). As of the date this motion is filed, service has not yet been effectuated on the Alleged Debtor.

2.     Alleged Debtor, Westbury Community Hospital, LLC is a Delaware limited liability company authorized to transact business in the state of Texas. ("Westbury" or "Alleged Debtor"). Continuum Management, LLC owns a 70% interest in Westbury and is responsible for the management of its operations. Downtown Hospital, LLC owns a 30% minority interest in the Alleged Debtor. Downtown Hospital, LLC shares common ownership with Petitioning Creditors 5556 Gasmer, LP and Bhandara Family Revocable Living Trust.

3.     Westbury operates a hospital facility in southwest Houston located at 5556 Gasmer Drive ("Hospital"), along with satellite offices located at 6600 Hornwood Dr., Houston, TX ("Hornwood Facility") and 2001 Cedar Bayou, Baytown, TX ("Baytown Facility"). The Hospital, Hornwood Facility and Baytown Facility are collectively referred to hereafter as "Westbury Facilities". The Westbury Facilities offer both medical and behavioral healthcare for adults and geriatric patients and provide a wide variety of inpatient and outpatient treatments. The Hospital also offers emergency services as well as operating room capabilities.

4.     The Westbury Facilities are currently operating and continue to be managed by Continuum Management, LLC ("Continuum"). Mr. Bobby G. Rouse, Jr. and members of his family, including his father, Bobby Rouse Sr., are managing members of Continuum and in

charge of managing the Westbury Facilities (collectively "Rouses"). Continuum is part of Continuum Healthcare group which has owned and managed several other healthcare facilities in Texas, Tennessee and Florida. Upon information and belief, most of these locations have recently ceased operations,

5. Petitioning Creditors Southside LTC Pharmacy, Sehgal & Sons Enterprises, L.P. dba Ultra Building Services, HDK Enterprises, Inc., Bidulfo Montoya dba Lucy's Commercial Services are vendors who provided goods and services to Westbury and are each owed the following amounts:

- Southside LTC Pharmacy - $47,110.70
- Sehgal & Sons Enterprises, L.P. dba Ultra Building Services -$7094.56
- HDK Enterprises, Inc. - $89,126.63
- Bidulfo Montoya dba Lucy's Commercial Services - $6,020.00

These debts are unsecured claims, all of which is at least 30 days past due and most of which is more than 60-90 days delinquent.

6. Additionally, Petitioning Creditors 5556 Gasmer, LP ("5556 Gasmer"), and Bhandara Family Revocable Living Trust ("Bhandara Family Trust") are the landlords of the properties where the Hospital and Baytown Facilities are located. The Alleged Debtor is delinquent in monthly lease payments to both of these creditors.

7. Petitioning Creditor 5556 Gasmer, LP is the landlord with respect to the Hospital. Monthly rental payments are $55,000. Currently, Westbury owes 5556 Gasmer, LP $210,000, representing rental payments for the months of January 2011 through April 2011. $110,000 of the balance due is more than 30 days delinquent and an additional $45,000 is more than 60 days past due.

151914/00019/00002698.DOCX 1

8. Petitioning Creditor Bhandara Family Trust is the landlord with respect to the Hornwood Facility. Monthly rental payments are $27,046. Currently Westbury owes Bhandara Family Trust $81,138, representing rental payments for the months of February 2011 through April 2011. $54,092 of the balance due is more than 30 days delinquent.

9. 11 U.S.C. §1104(a) provides that any time after the commencement of a Chapter 11 case the Court may appoint a trustee to take possession of the estate and to operate any business of the debtor if necessary to preserve the estate or prevent loss.

10. As discussed more fully below, the immediate appointment of a Trustee is necessary to prevent the principals of Continuum from wasting the resources of Westbury and thereby, compromising patient care.

## II.    Factual Background

11. In 2007, Petitioning Creditor 5556 Gasmer purchased the real property where the Hospital is located and subsequently entered into a lease with Continuum to build a hospital facility. Construction of the building began in 2008, with cost exceeding $9 million. In August 2008, Continuum canceled its lease with 5556 Gasmer. The building subsequently suffered $4.2 million in damage from Hurricane Ike and took more than a year to repair.

12. Once the building was repaired, 5556 Gasmer was unable to readily lease the facility due to its unique design as a mental health facility. Accordingly, renewed discussions began with Continuum regarding a lease of the property. In March 2010, Continuum signed an Operating Agreement and Management & Development Agreement with Westbury to manage the Hospital ("Operating Agreement"). As added incentive, Continuum was assigned a 15% ownership interest in Westbury. The other 85% of Westbury was owned by Downtown Hospital.

13. Subsequently, the Rouses approached the principals of Downtown Hospital about merging the Hornwood and Baytown outpatient facilities with Westbury in order to avoid forthcoming Medicare/Medicaid rate reductions impacting non hospital healthcare facilities, including the Hornwood and Baytown Facilities.

14. In the fall of 2010, the parties agreed to a merger, with Continuum acquiring an additional 55% interest in Westbury from Downtown Hospital in exchange for contributing the assets of the Hornwood Facility and Baytown Facility a to Westbury ("Contributed Assets"). The merger began in October 2010 and was completed on January 14, 2011 ("Merger Period"), resulting in Continuum owning 70% interest in Westbury and Downtown Hospital retaining a 30% minority interest.

15. During the Merger Period, the Operating Agreement was amended ("Amended Operating Agreement") and provided, in pertinent part, that Feroze Bhandara ("Bhandara"), the principal of Downtown Hospital, personally guarantee an extended line of credit for Westbury, through Wallis State Bank, in the amount of $750,000 ("LOC"). This loan and guarantee was finalized on November 24, 2010 and the LOC was to be used to help fund Westbury's operations.

16. The Amended Operating Agreement also provides that, to the extent that cash flow from operations and funds from the LOC is insufficient to meet Westbury's obligations, both Continuum and Downtown Hospital are obligated to loan the necessary funds to Westbury, in proportion to the interest held. Thus, in the event of a shortfall, Continuum is required to fund 70% of the deficiency and Downtown Hospital is required to fund the remaining 30%. Under the Amended Operating Agreement, neither party was entitled to receive distributions from Westbury until these loans are repaid. Continuum has never provided funding to Westbury in its

proportionate share and has made distributions to itself despite the fact that Downtown Hospital's principal is owed money by Westbury.

17.     Continuum rapidly burned through the initial LOC and in January, 2011, Bhandara was required to once again fund operations for Westbury by guaranteeing an increase in the LOC. The LOC was increased by $500,000 on January 14, 2011. And, as discussed more fully below, the LOC was subsequently increased by an additional $300,000 on March 18, 2011. Bhandara was required to personally guarantee this additional funding as well. Continuum and its principals have no personal liability for the LOC.

18.     The Amended Operating Agreement further provides for Continuum to continue to manage and operate the Westbury Facilities, with oversight from a five member Board of Managers comprised of Continuum Managers Bobby G. Rouse, Jr, John Rouse and David Edson ("Continuum Managers") and Downtown Hospital Managers Fred Bhandara and Berzin Bhandara ("Downtown Hospital's Managers"). The Continuum Manager and Downtown Hospital Managers are collectively referred to hereafter as "Board of Managers" or "Board".

### III.     Egregious Conduct Warranting Appointment Trustee and Emergency Relief

19.     Since taking control of Westbury, Continuum has engaged in a pattern of fraud, dishonesty, incompetence, or gross mismanagement of the Hospital's affairs including the following:

> i. Continuum has not paid its vendors for goods and services which have been provided to Westbury. As of the Involuntary Petition Date, the Alleged Debtor's book and records indicate that its vendors are owed in excess of $1.7 million. Of this sum, more than 70% is over 60 days delinquent and 21% is more than 30 days delinquent.
>
> ii. The Alleged Debtor's book and records indicate that payments to certain current critical utility providers are more than 120 days delinquent, causing a concern that necessary utilities could be disconnected and disrupt patient care.

iii. The Texas Department of State Health Services completed an audit of the Alleged Debtor on March 17, 2011 and cited numerous deficiencies in hospital compliance with required procedures.

iv. Many of the Alleged Debtor's vendors have refused to continue supplying the hospital, causing the facility to be inadequately equipped to provide proper patient care.

v. The Alleged Debtor's books and records indicate that in the 45 day period between March 10, 2011 and April 24, 2011, Continuum Management has issued checks to itself and its principals totaling approximately $350,000. Continuum refuses to provide an accounting for these payments.

vi. The lack of adequate management and ill equipped facility has lead to significant turnover in healthcare staffing.

vii. Continuum is improperly paying expenses from Westbury's bank account which are not the responsibility of the Alleged Debtor.

viii. The Hospital provides treatment to an average of 35 patients per day, while the outpatient facilities average 300 patients daily, equating to gross revenue of approximately $1 million per month.

ix. Continuum has engaged in "check kiting", by knowingly depositing checks from one of its bank accounts into its operating account, located a different bank, even though funds were not available to honor the checks.

x. Continuum is improperly operating one of its affiliated entities from the hospital which could jeopardize the hospital's licensing. Continuum is required to obtain approval from the Board before transacting business with its affiliates. Board approval has not been obtained for this action.

xi. Since November 24, 2010, the Alleged Debtor has received $1.45 million in advances on its line of credit. Neither Continuum nor any of its principals have personal liability on the LOC. The principal of Downtown Hospital has executed a guarantee for the line of credit.

xii. Continuum improperly refuses to provide any accounting or financial reports to Downtown Hospital's Managers in violation of its Operating Agreement

xiii. Continuum has not provided required financial reporting to its secured lender, as required by its loan documents.

xiv. Since Continuum has taken control of the Alleged Debtor's bank accounts, substantial "NSF" charges have been incurred and checks have been returned unpaid as "NSF".

xv. Continuum has restricted access by Downtown Hospital Mangers to the Alleged Debtor's bank account which receives electronic payments from Medicare and Medicaid. Upon information and belief, a payment of close to $650,000 is expected in this account at anytime and a valid concern exists that Continuum will divert this money away from the hospital.

20. Additionally, Continuum's mishandling of Westbury affairs has caused the hospital accreditation and licensing to fall severely behind schedule. Because of Continuum's mismanagement, Westbury was severely delayed in obtaining its Medicaid licensing, which has held up more than $1 million in cash flow. Approximately $300,000 of this amount has been received by the Alleged Debtor and another $650,000 should be received at anytime.

21. Moreover, on March 8th, Continuum's owners paid themselves, without proper notice or an accounting as required by its Operating Agreement. Checks were improperly written to Continuum management totaling $63,707. As provided in the Operating Agreement, Downtown Hospital's Managers have made repeated requests of Continuum and the Rouses for a detailed accounting of these transfers but, to date, has not received any detail to explain or account for these transactions.

22. On March 18, 2011, the Rouses provided an incomplete accounting to minority owner Downtown Hospital for expenses paid during the Merger Period which indicated that a $433,000 credit was due to Westbury from Continuum for funds utilized to pay costs of its other facilities for pre Merger Period expenses. This diversion of funds, which has not been repaid, has caused Westbury to default in its own obligations to its creditors.

23. In order to keep the hospital operating, on March 18, Bhandara made arrangements for the LOC to be increased by an additional $300,000, subject to an agreement with the Rouses that management reimbursements to Continuum would be deferred until

Westbury's Medicaid licensing was approved. Additionally, Bhandara is also a guarantor of two credit cards which have been used to pay necessary operating expenses for Westbury.

24. Subsequently, on March 24, in contravention to the agreement with Bhandara, $130,000 in checks were written to Continuum Management on the Westbury bank account, completely draining the bank account and leaving no money to meet payroll that was due the very next day. Ultimately, Bhandara and Bobby Rouse Sr. each funded $25,000 to cover the payroll of approximately $50,000. However, one week later the Rouses wrote a check from Westbury's account to reimburse Bobby Rouse Sr. for his $25,000 contribution. No corresponding reimbursement was made to Bhandara.

25. Moreover, during the week of April 1st, several checks were written to Continuum and the Rouses totaling approximately $140,000. As provided in the Operating Agreement, Downtown Hospital's Managers have made repeated requests of Continuum and the Rouse's for a detailed accounting of these transfers but, to date, has not received any detail to explain or account for these transactions.

26. Finally, Downtown Hospital's Managers have recently learned that Continuum has relocated its home health care business to the Hospital facility without the requisite approval of the Board of Managers. This arrangement could jeopardize the Hospital's licensing.

27. Continuum continues to divert Westbury's funds away from its operations, commingle its other businesses with Westbury without Board approval and refuses to provide Downtown Hospital's Managers with an accounting of these transactions.

28. If a trustee is not appointed to manage the affairs of Westbury, Continuum will continue this pattern of misconduct, ultimately impacting the level of care received by Westbury's patients.

151914/00019/00002698.DOCX 1

## IV.     BASIS FOR RELIEF

29.     Section 1104(a) of the Bankruptcy Code establishes the standards for appointment of a chapter 11 trustee.

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee--
>
> (1) For cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; [or]
>
> (2) If such appointment is in the best interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor ... .
>
> or
>
> (3) if grounds exist to convert or dismiss under § 1112, but the court determines the appointment of a trustee is in the best interests of creditors and the estate.

11 U.S.C. § 1104(a) (West 2010). "The court may consider both prepetition, as well as postpetition conduct in determining the necessity of a trustee." *In re Microwave Products of America, Inc.,* 102 B.R. 666, 671 (Bankr. W.D. Tenn. 1989).

30.     Appointment of a Chapter 11 Trustee in an involuntary bankruptcy case during the "gap" period before an order for relief is entered is authorized and proper in cases where such appointment is warranted under 11 U.S.C. §1104. *See generally 2-303 Colliers on Bankr. P. 303.29* (West 2010); *see also In re Professional Accountants Referral Services, Inc.,* 142 B.R. 424 (Bankr. D. Co. 1992).

### A.  "Cause" Exists to Warrant Appointment of Trustee Under Section 1104(a)(1)

31. Section 1104(a)(1) of the Bankruptcy Code allows a court to appoint a chapter 11 trustee only upon a clear and convincing demonstration of "cause". Sufficient cause for appointment of a trustee under section 1104(a)(1) exist if "fraud, dishonesty, incompetence, or gross mismanagement" of the debtor's affairs, or "similar cause" is demonstrated by clear and convincing evidence. *In re Mako, Inc.,* 102 B.R. 809, 811-12 (Bankr. E.D. Okla. 1988); *In re Fisher & Son, Inc.,* 70 B.R. 7, 8 (Bankr. S.D. Ohio 1986). What constitutes "cause" under section 1104(a)(1) is determined on a case-by-case basis. *In re Sharon Steel Corp.,* 871 F.2d 1217, 1226 (3rd Cir. 1989); *In re General Oil Distributors, Inc.,* 42 B.R. 402, 409 (Bankr. E.D. N.Y. 1984).

32. Courts have ordered the appointment of a chapter 11 trustee under section 1104(a)(1) in cases involving conflicts of interests, misuse of assets and funds, inadequate recordkeeping and reporting, lack of appropriate cost controls, nonpayment of taxes or conduct constituting fraud or dishonesty. *In re Clinton Centrifuge, Inc.,* 85 B.R. 980, 985 (Bankr. E.D. PA. 1988).

33. In order for an asserted conflict of interest to constitute "cause" for appointment of a chapter 11 trustee under section 1104(a)(1), it must be shown that the conflict threatens the viability of the debtor's business or serious loss to the estate. *In re Microwave Products, 102 B.R* at 672. In general, when transactions between affiliates are called into question, a trustee will not be appointed unless the moving party can show that the affiliate transactions were improper, were detrimental to the estate or involved actual fraud. *In re Royster Co.,* 145 B.R. 88, 90 (Bankr. M.D. Fla. 1992). *See also In re Justus Hospitality Properties, Ltd.,* 86 B.R. 261, 266 (Bankr. M.D. Fla. 1988); *In re Tyler, 1*8 B.R. 574, 578 (Bankr. S.D. Fla. 1982).

34. In this case, the Alleged Debtor's conduct shows that the appointment of an objective, independent trustee is necessary. Continuum continues to divert Westbury's funds to its other businesses and pay its owners while refusing to pay Westbury's expenses, unnecessarily creating conditions which will be detrimental to its patients.

### B. **Appointment of Trustee is in the Best Interests of Creditors, Equity Holders and Estate**

35. Section 1104(a)(2) permits the court to appoint a trustee if it would be in the best interests of creditors, equity security holders or other interests of the estate. The standard under section 1104(a)(2) is more flexible and permits the court to appoint a trustee in some instances even in the absence of a finding "cause" under section 1104(a)(1). *In re Ionosphere Clubs, Inc.,* 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990)*; In re Microwave Products of America, Inc., 102 B.R. at 675.* Under section 1104(a)(2), the court must engage in a cost-benefit analysis to determine whether the appointment of a trustee is in the best interests of the estate. *In re Microwave Products of America, Inc.,* 102 B.R. at 675. "[T]he court must consider the Debtor's past and present performance and the prospects for the Debtor's rehabilitation, and weigh the benefits that would be derived by the appointment of a trustee against the expense of the appointment." *In re Royster Co.,* 145 B.R. 88, 90 (Bankr. M.D. Fla. 1992)*. See also In re Sharon Steel Corp.,* 871 F.2d 1217, 1226 (3rd Cir. 1989).

36. In this case, the Alleged Debtor is a new operating facility can successfully be rehabilitated with appropriate management. The benefits from the appointment of a Chapter 11 Trustee clearly outweigh any cost.

151914/00019/00002698.DOCX 1

## V. CONCLUSION

37. Current management cannot be trusted to continue to operate the Alleged Debtor. Westbury's expenses continue to accrue and are not being paid while Continuum continues to divert funds to its owners and other affiliated entities.

38. Accordingly, Continuum's mismanagement of Westbury's affairs and cash and improper diversion of funds to its affiliated entities warrants an emergency appointment of a Chapter 11 Trustee in this case.

WHEREFORE, Movants pray that

1. The Court set an expedited hearing on this Motion.

2. The Court enter the attached order directing the U.S. Trustee to immediately appoint an interim trustee pursuant to 11 U.S.C. §1104.

3. The Court grant such other and further relief as is just and proper.

DATED: April 29, 2011

Respectfully submitted,

HOOVER SLOVACEK LLP

By: */s/ Melissa A. Haselden*
EDWARD L. ROTHBERG
State Bar No. 17313990
MELISSA A. HASELDEN
State Bar No. 00794778
5847 San Felipe, Suite 2200
Houston, Texas 77057
Telephone: 713.977.8686
Facsimile: 713.977.5395

ATTORNEYS FOR MOVANTS

151914/00019/00002698.DOCX 1

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing EMERGENCY MOTION FOR APPOINTMENT OF TRUSTEE AND REQUEST FOR EXPEDITED HEARING has been forwarded via First Class U. S. Mail, postage prepaid, and to certain parties as indicated below by facsimile/ or ECF filing/ or hand delivery on April 29, 2011, to:

Nancy Holley (First Class U. S. Mail postage prepaid and ECF filing)
United States Trustee
515 Rusk, Room 3516
Houston, TX 77002

Bobby Rouse, Jr. (First Class U. S. Mail, postage prepaid and hand delivery)
Westbury Community Hospital LLC
5556 Gasmer Houston, TX 77035

Bobby Rouse, Jr. (First Class U. S. Mail, postage prepaid and facsimile (615)376-6150)
Westbury Community Hospital LLC
c/o Continuum Healthcare
750 Old Hickory Blvd, Suite 2-100
Brentwood, TN 37027

Westbury Community Hospital LLC (First Class U. S. Mail, postage prepaid)
6060 Richmond Avenue, Suite 380
Houston, TX 77057

C T Corporation System (First Class U. S. Mail, postage prepaid)
Registered Agent for Westbury Community Hospital LLC
350 N. St. Paul St., Ste. 2900
Dallas, TX 75201-4234 USA

                                                          */s/ Melissa A. Haselden*
                                                          MELISSA A. HASELDEN